**ZIP DEE, INC., Plaintiff,**

v.

**DOMETIC CORPORATION, Defendant.**

**No. 93 C 3200.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 16, 1999.

See also 63 F.Supp.2d 868.

---

Harry M. Levy, James J. Hill, Emrich & Dithmar, Chicago, IL, for Zip Dee, Inc., plaintiff.

Peter V. Baugher, Schopf & Weiss, Chicago, IL, Ira S. Sacks, David R. Buchanan, Jeffrey D. Sullivan, Fried, Frank, Harris, Shriver & Jacobson, New York City, for The Dometic Corporation, defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Anyone who has followed the extended succession of rulings and opinions in this patent infringement case[1]—either of necessity or, though this is hard to imagine, as a matter of choice—has had to be aware of this Court's discomfort with some of the conclusions to which it has been driven. There is something intuitively troubling in the notion that a party such as asserted infringer Dometic Corporation ("Dometic") can introduce into an awning—a product whose very purpose is to keep water from soaking the people whom it is designed to shelter—a set of holes that have no purpose other than to let water through (thus subverting the very raison d'etre of the product), can then introduce another element that has no purpose other than to catch that water before it strikes the people beneath—and then having done so, can urge that those two artificial constructs enable the party to avoid infringement of the patent whose most basic elements (the core of the invention) have been slavishly copied by the asserted infringer. That seems no different conceptually from a situation in which an inventor has developed and patented a breakthrough in the umbrella industry, only to find a competitor copying that breakthrough but then urging noninfringement because the competitor had punched holes in the umbrella's sheltering fabric (thus creating the antithesis of an umbrella—one that deliberately leaks like a sieve), but had then "cured" the purposeless presence of those holes by inserting a second and impervious layer of waterproof fabric twixt the punctured fabric and the umbrella's user.

And yet that counterintuitive result appeared to have been a likely consequence of Dometic's device (see the August 4, 1998 opinion)—appeared, that is, until the emanation of more recent teaching from the Court of Appeals for the Federal Circuit. From the outset Dometic has stressed and restressed an element-by-element approach to the question of infringement, and this Court has found that such an approach may drive the analysis of direct infringement with adverse consequences to the patentee—in this instance Zip Dee, Inc. ("Zip Dee"). But some caselaw developments in the area of the doctrine of equivalents have cast a different light on the matter. This opinion will address the still-open *Markman* questions (*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)) in light of (1) those more recent developments and (2) the attached February 18, 1999 Stipulation and Order in this case (cited "S & O ¶ —," with the features of Dometic's asserted infringing structure being identified here by the same shorthand as in the S & O drawing).

### Equivalence of Dometic's BAC

Here the core advances introduced by the Zip Dee patent[2] are in two "means for connecting" structures that are part of the total awning assembly—one connecting the awning structure to the recreational vehicle and the other connecting part of the awning fabric to the metal awning cover. Those elements have been reconceived by Zip Dee in a watertight mode such that, together with the normal watertight awning fabric, the entire structure is rendered watertight—impervious to water. For its part, Dometic has added two components that bring the end result to the place of beginning:

---

**1.** From the depressing Appendix added to this Court's August 4, 1998 memorandum opinion and order (63 F.Supp.2d 868), it appears that effort was actually the sixteenth in a long string of opinions—some longer, some shorter, some published, some unpublished. Although that Appendix concluded by saying "it can only be hoped that the end is in sight"

and although only one brief August 11, 1999 product has had to be generated since then, the discussion here indicates the unwisdom of being overly optimistic. But hope springs eternal.

**2.** S & O ¶ 3 reflects Dometic's concession that Zip Dee's patent in suit is valid.

1. It has punched into a portion of the awning fabric (Dometic BA) holes and grommets that of themselves are totally purposeless (indeed, they are totally counterproductive in a device intended to be waterproof).

2. It has introduced an intervening layer of waterproof fabric (Dometic AC) beneath those holes, solely to escape the adverse effect of the first purposeless component.

That may be clever, but it is clever only in the same sense as the sleight-of-hand performed by any illusionist whose stock in trade is deceiving the viewer. For this Court the Dometic sleight of hand is rendered ineffective in the equivalence context by the Federal Circuit's clarification in *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267-68 (Fed.Cir.) of that court's earlier decision in *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303 (Fed.Cir.1998). *Odetics* says that "a component-by-component analysis of structural equivalence" (*id.* at 1268) is not the order of the day and that "deconstruction or parsing" (*id.*) of the type urged by Dometic is the wrong path to take in the analysis of equivalence. In this instance it must be recognized that Dometic's addition of the waterproof fabric layer to catch the water that is let through by the gratuitous introduction of the grommeted holes can produce the required combination of functional identity and structural equivalence succinctly described in *Odetics, id.* at 1267:

> Functional identity and either structural identity or equivalence are both necessary.

If Dometic is right in disputing that reading of the Federal Circuit's current teaching, that correction will have to come from the Federal Circuit itself. In the meantime, what has been said here sets the rule of decision for trial purposes, and the parties are expected to address the question whether the issue is to be posed

in those terms to the jury or is instead to be resolved by this Court (see *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37–39, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)).[3] In addition, the further submissions by the litigants referred to hereafter shall identify what else remains for jury determination in this area of the case.

### Equivalence of, or Literal Infringement by, Dometic AB

It has already been agreed by the litigants that this Court's earlier rulings call for a jury determination whether Dometic's AB also infringes under the doctrine of equivalents (but in this instance only under certain use conditions). That being so, nothing more need be added on that score at this time, other than the same question framed at the end of the preceding section as to a jury-or-judge resolution. On the related issue of literal infringement, S & O ¶ 4 reflects the parties' agreement that Dometic AB does not literally infringe the patent in suit, and that contention will not be advanced at trial.

### Literal Infringement by Dometic BAC

This Court earlier expressed orally its sense that Dometic BAC does not literally infringe Zip Dee's patent (Oct. 14, 1998 Tr. 2–5). That subject has since been addressed by the parties through supplemental memoranda. It must be acknowledged that Zip Dee's April 21, 1999 Reply Memorandum has presented arguments that carry considerable force to the effect that Dometic's already-described physical game-playing changes introduced into its product should be equally ineffective from a semantic game-playing perspective, so that literal infringement could apply as well. But the hurdle of proving infringement via equivalence is lower than that of proving literal infringement, and Zip Dee's success on the former score in this opinion essentially obviates the need to confuse matters by adding a claim of such literal

---

**3.** *Odetics* at 1267-68 treats its own analysis as conforming directly to the definitive teaching of *Warner–Jenkinson* on the law of equivalence.

infringement to the trial mix. Accordingly that position will also not be placed before the jury at trial.

### Conclusion

What has been said here resolves what this Court understands to have been the .only tag ends remaining for pretrial resolution, and that is certainly the thrust of the litigants' most recent submissions as well. It will of course be necessary for the parties to recast some of their earlier-tendered proposed jury instructions to conform to the rulings to date, and both for purposes of scheduling those revised submissions and to discuss any other pretrial matters—obviously including the actual setting of a trial date—this Court sets a telephonic status hearing for 8:30 a.m. September 28, 1999.

## APPENDIX

### *STIPULATION AND ORDER*

The parties hereto, through their respective attorneys, agree and stipulate as follows:

1. Each party preserves its right to appeal any decision or ruling heretofore made by the court in this action irrespective of the agreements made herein.

2. Zip Dee agrees that it will not assert, as a theory of infringement at trial, that the portion of the accused Dometic device referred to as AC (see drawing attached hereto), by itself, is the infringing connector or strip under the patent in suit for purposes of literal infringement or infringement under the doctrine of equivalents.

3. Dometic agrees that it will not contest the validity of the patent in suit and will withdraw its request that the court construe the claims of the patent in suit in light of the prior art (including but not limited to the 1960s Zip Dee product) to determine the applicability of those claims to the AC portion of the accused Dometic device. Dometic reserves its right to rely on the prior art (including but not limited to the 1960s Zip Dee product) for all other purposes, including issues of infringement and the submission referred to in paragraph 5 below.

4. The parties agree that Zip Dee may assert, as a theory of infringement at trial, that the portion of the accused Dometic device referred to as AB (see drawing attached hereto), by itself, is the infringing connector or strip under the patent in suit for purposes of infringement under the doctrine of equivalents. The parties agree that Zip Dee may not assert, as a theory of infringement at trial, that the portion of the accused Dometic device referred to as AB (see drawing attached hereto), by itself, is the infringing connector or strip under the patent in suit for purposes of literal infringement.

5. The parties disagree as to whether Zip Dee may assert, as a theory of infringement at trial, that the portion of the accused Dometic device referred to as BAC (see drawing attached hereto) is the infringing connector or strip under the patent in suit for purposes of literal infringement or infringement under the doctrine of equivalents. Dometic orally has raised arguments on the BAC infringement theories in connection with a status conference with this Court, to which Zip Dee has responded in its recent submissions. The Court permitting, Zip Dee agrees that Dometic may respond to Zip Dee's written submissions by filing a brief directed only to the issue of the BAC infringement theories by March 26, 1999. The Court permitting, Dometic agrees that Zip Dee may reply to Dometic's brief in this regard by April 16, 1999.

6. The parties agree, with the Court's permission, that after the Court rules on the outstanding issues relating to the BAC infringement theories, the parties will submit revised jury instructions and special interrogatories to the Court.

7. The parties agree, with the Court's consent, that the trial of this action shall be bifurcated in the following manner: the hearing concerning the amount of damages shall be bifurcated from the hearing on all

other issues, with all other evidence including evidence relating to willful infringement being presented during the liability phase of the trial. The same jury as will hear the liability phase of the trial will hear evidence of the amount of damages, if necessary.

**IT IS SO ORDERED:**

FIG. 1

SLATTED METAL COVER CARRIED "ON TOP OF" AWNING FABRIC

GROMMETS TO ALLOW WATER TO PASS THROUGH TO UNDERLYING AWNING FABRIC

RV AWNING RAIL

WALL OF RV

CONTINUOUS AWNING FABRIC FROM RV AWNING RAIL TO ROLLER TUBE

See Fig. 3

ROD "C"

See Fig. 2

ROD "B"

ROD "A"

FLAP OF AWNING FABRIC

EXHIBIT

A